## MARTIN v. FIELDER et al.

No. 20127. Opinion Filed Dec. 13, 1932.

Mauntel & Spellman, for plaintiff in error.

J. J. Glaser and E. W. Snoddy, for defendants in error.

CLARK, V. C. J. This is an action commenced in the district court of Woods county by plaintiff in error herein against the defendants in error herein, to recover the

value of 30 shares of bank stock in the defendant in error bank, owned by the plaintiff and alleged to have been appropriated by the defendants for their own use and benefit.

The parties appearing here as they appeared in the trial court, will be designated plaintiff and defendants.

Plaintiff alleged, in substance, in his petition that the stock was transferred to plaintiff in blank in September, 1919, by Clarence Owens, the then owner; that, on or about the 1st of October, 1924, plaintiff deposited the shares of stock in defendant bank and delivered the same to defendant Fielder, with instructions to place same in the vault of defendant bank until such time as plaintiff should call for the same. That defendant Fielder knew plaintiff was the owner and holder of said shares of stock, and knew the place of residence of plaintiff. That defendant Fielder, as an individual and as cashier of defendant bank, has refused to divulge to plaintiff who now is the record owner of said stock, but has advised plaintiff that defendant Fielder and bank have appropriated said shares of stock to their own use and benefit. That demand has been made for said stock, and defendants have failed, refused, and neglected to deliver same. That plaintiff has at no time been required or requested to pay any assessment, nor received any notice of any assessment, and that said stock was not incumbered nor hypothecated, and not placed in said bank except for safekeeping for the plaintiff. That defendants have no interest in said stock except to preserve and keep the same for the benefit of plaintiff.

The defendant bank filed answer by way of general denial, and admitted it was a corporation under the laws of Oklahoma, and engaged in a general banking business; that the stock was issued in the name of Clarence Owens; that on and long prior to June 30, 1923, plaintiff claimed to be the owner and holder thereof; that the stock was assigned in blank by Owens to plaintiff on September 11, 1919, and carried in the name of Owens, at request of plaintiff, who was cashier and director of another bank and member of State Banking Board. That on June 30, 1923, and prior thereto, a bank examiner directed and ordered defendant that certain notes and accounts must be charged off, which, when charged off, would impair the capital stock of defendant. That on June 30, 1923, at a regular meeting of directors and stockholders of defendant, at

which all directors and stockholders were represented, on motion unanimously carried, an assessment of 30 per cent. was levied to be paid within 30 days from said date. That on said date plaintiff was owner and claimed to be owner of the stock in question; and Owens, in whose name the stock stood on the books of defendant, so informed defendant. That following the assessment, and within 30 days, plaintiff was notified by mail of the assessment by defendant, and repeatedly notified by letter and in person of said assessment, with a demand for payment. That plaintiff failed, neglected, and refused to pay said assessment, and at no time paid the same or any part thereof.

That, on March 30, 1925, defendant Fielder, as cashier of defendant bank, notified plaintiff by registered letter that unless said assessment was paid by April 20, 1925, said stock would be advertised and sold according to law to satisfy the lien of defendant bank, which letter plaintiff received on April 1, 1925. The defendant bank gave due and legal notice that, on May 25, 1925, the defendant bank would offer for sale and sell to the highest and best bidder for cash said stock belonging to plaintiff to satisfy the lien by reason of such assessment. That on said date said stock was sold according to law and defendant bank at said sale became the purchaser for the amount of the assessment, interest, and costs of sale.

Answer of defendant Fielder was by way of general denial.

Plaintiff, by way of reply, denied the allegations of defendant bank's answer which were inconsistent with the allegations of plaintiff's petition.

Plaintiff denied that on June 30, 1923, or any other time, the Bank Examiner directed and ordered defendants to charge off certain accounts, and when charged off that the capital stock of said bank would become impaired. Denied that during the time mentioned in the pleadings and prior to June 30, 1923, up to the present time, the stock of the defendant bank was ever impaired. Denied that while he was the owner of the stock up to present time, he was indebted to defendant bank or defendant Fielder. Denied that at a certain pretended meeting on June 30, 1923, all the stockholders of said bank were represented, and denied that a motion was unanimously carried to levy an assessment of 30 per cent. Denied that he was ever notified that a legal assessment had been made by the di-

rectors of defendant bank. Denied that the State Banking Department at any time ordered and directed that any assessment should be made. Denied that on May 25, 1925, or any time the defendant bank gave due and legal notice that the stock of plaintiff would be sold. Denied that he received any notice of said pretended sale, and that defendants at all times knew his residence.

The defendants assumed the burden and introduced their proof, at the close of which plaintiff demurred, which was overruled and exception saved.

The plaintiff thereupon introduced his proof and rested, and defendants introduced their rebuttal testimony and rested. Thereupon defendant Fielder moved for instructed verdict in his favor, which was sustained; thereupon the plaintiff moved for directed verdict, which was overruled and exceptions saved.

The jury returned verdicts in favor of the defendants. Motion for new trial was overruled, and the plaintiff brings the cause here for review.

Plaintiff in error contends that the court erred in overruling his demurrer to defendants' evidence, for the reason the undisputed evidence adduced by defendant shows that the assessment made on June 30, 1923, was without notice to any of the stockholders or directors and made when only 40 per cent. of the stock was represented at said meeting, and the pretended assessment was therefore void; that the pretended assessment was not made in accordance with or by authority of law, and was not made at the request of the State Banking Department. That said assessment could not be considered as a voluntary assessment, for the reason that plaintiff had never consented or assented that any assessment should be made. That the sale was a mere sham. That the defendant bank never acquired title, and that defendant Fielder gave his check for the $900, and the bank had no authority to cancel the stock and transfer it to the bank and then to defendant Fielder.

The evidence of defendant, who assumed the burden, discloses that the defendant bank was a state bank, with capital stock of $10,000. divided into 100 shares at $100 par value each. That one Clarence Owens, who was president of defendant bank, was the owner of 60 shares of said stock. That on September 11, 1919, the said Clarence Owens assigned in blank certificates for 30

shares of said stock, as shown by the certificates of stock. That said stock was never transferred on the books of the bank from Clarence Owens to Charles Martin, who claimed after the assessment was made thereon, on June 30, 1923, to be the owner thereof.

That in December, 1922, the Bank Commissioner of Oklahoma ordered that certain loans in said defendant bank be reduced, additional security secured on part of its paper, or same charged off by January 1, 1923. That one of said notes of one Rogers complained of by the Bank Commissioner, in the neighborhood of $1,900, became worthless due to the fact that Rogers took bankruptcy. That thereafter the defendant bank suffered a loss by reason of the failure of the Central Exchange Bank of Woodward, Okla., in the sum of $1,044.33, which was in the early part of 1923. That thereafter, and on June 30, 1923, there was a meeting of the directors and stockholders of said bank, at which meeting all of the directors and all of the stockholders, as shown by the books of the bank, were present. At which meeting, as shown by the minutes thereof, which were admitted in evidence, it was unanimously agreed that the note of the said Rogers, in the total sum of $1,955.63, and the balance due from the defunct Central Exchange Bank be charged off. The minutes further read as follows:

"As an insufficient amount of undivided profits appeared to absorb this loss, at once, a motion was made to levy a voluntary assessment against the outstanding stock in the amount of 30 per cent. payable within 30 days from date. Motion unanimously carried."

The evidence further disclosed that Clarence Owens, in whose name the bank records showed the stock claimed by plaintiff herein stood, voted said 30 shares of stock at said meeting.

The evidence further disclosed that after said meeting the said Clarence Owens, who was president of said defendant bank, advised the defendant Fielder, who was cashier of defendant bank, that Charles Martin, who is plaintiff herein, would pay the assessment on 30 shares of the stock that was in his Owen's, name, and to advise Martin of said assessment. That the defendant Fielder, as cashier of defendant bank, mailed to Martin, plaintiff herein, on the same day of the meeting, copy of the minutes of the meeting. That thereafter, defendant Fielder wrote

Martin, plaintiff, of the assessment on several occasions and also advised him at one time that all of the assessments had been paid except his, and calling for payment of his assessment. The plaintiff wrote defendant Fielder on July 20, 1923, in part as follows:

"Been putting off writing you expecting money every day from some paper due July 15. Can send you my note due Sept. 15, or let it run along until my money comes in. * * *"

Again the defendant Fielder wrote plaintiff on July 21, 1923, expressing regret that he could not pay his assessment at this time, and advising the condition of the bank, and with regard to selling of the bank, and selling plaintiff's stock and deducting the $900 assessment. The plaintiff wrote the defendant Fielder September 12, 1923, as follows:

"Just home from trip and had $3,000 due Sept. 1. Party promised to pay sum this month, am just as sorry as you are. If you wish will send you note for amt. without int. if paid by Oct. 16."

The evidence further shows that in October, 1924, the plaintiff, Martin, called at the defendant bank and produced 30 shares of stock which had been assigned in blank by Clarence Owens, which assignment was dated September 11, 1919, but which shares had never been transferred on the records of the bank from Owens to Martin, the plaintiff herein, and left the stock with defendant Fielder and asked that the stock be re-issued to him. Defendant Fielder advised him that it could not be re-issued because the $900 assessment had not been paid; and plaintiff said "all right, then," and defendant Fielder asked plaintiff when he was going to pay, and plaintiff said he would pay as soon as he could and to just go ahead and keep the stock until he could pay it. That prior to this conversation in October, 1924, the defendant Fielder, cashier of said bank, had not had any conversation relative to said shares of stock with the said Martin.

The evidence discloses that the first time the defendant Fielder, cashier of said bank, knew that the said 30 shares of stock had been assigned to Martin was after the meeting of the stockholders, and the assessment had been levied on said stock, on June 30, 1923.

The evidence fails to show any demand made on the defendant bank prior to the assessment that the bank transfer the 30 shares of stock to plaintiff, Martin, or claim made to said stock by Martin prior to said assessment.

The evidence discloses that defendant Fielder, as cashier of defendant bank, had active management of the bank since April, 1922, in conjunction with the board of directors.

The evidence further discloses that, after numerous requests of the State Banking Department of Oklahoma that this $900 due on assessment of the stock be straightened up, on March 25, 1925, the Assistant Bank Commissioner, by authority of the Bank Commissioner of Oklahoma, by communication addressed to the officers and directors of defendant bank, requested that this $900 assessment be collected within 30 days, or follow the usual legal procedure in handling the stock.

At a meeting of the board of directors of defendant bank, held April 23, 1925, authority was granted to employ counsel to dispose of the 30 shares of stock of Martin in order to collect the assessment.

On March 30, 1925, the defendant Fielder, as cashier of defendant bank, advised plaintiff by registered letter that unless the assessment was paid by April 20th, the stock would be advertised and sold, which was received by plaintiff on April 1, 1925.

The plaintiff did not pay the assessment.

Notice of sale of the 30 shares of stock, signed by defendant bank, by its president, and attested by its cashier, dated May 6, 1925, was published in weekly paper in Woods county for three consecutive weeks, the first publication being on May 8th, and the last publication on May 22, 1925; which notice stated that said stock would be offered for sale, and sold on May 25, 1925, at the hour of two o'clock p. m. to the highest and best bidder for cash in hand, at the banking house of defendant bank.

Evidence further discloses that at said time and place the said stock was offered for sale, and, there being no bidders, the same was bid in by the defendant Fielder, for the defendant bank, for the amount of $900 and interest, publication fees and attorney's fee.

Under such undisputed circumstances, we are of the opinion that the plaintiff, by permitting the stock to remain in Clarence Owens' name upon the records of the bank, in so far as the bank and the plaintiff, Martin, were concerned, the title of said stock remained in Owens. That the said Owens had a right to vote said stock at the meeting on June 30, 1923.

Section 4177, C. O. S. 1921 [O. S. 1931, sec. 9129], provides in part as follows:

"Any owner of any of the shares of the capital stock of any banking corporation, may make disposition of such shares by written assignment indorsed upon the certificates of stock and by delivery of the same, but no such assignment shall be effectual to transfer the title to such shares of stock until the same are transferred upon the stock books of the corporation. * * *"

Section 13 of the by-laws of the bank, admitted in evidence, which has reference to transfer of the stock of the bank, reads, in part, as follows:

"The stock in this bank shall be assigned only on the books of this bank subject to the provisions and restrictions of the banking laws of Oklahoma, and a transfer book shall be kept, in which all assignments and transfers of stock shall be made. * * *"

We are further of the opinion that when the officers and directors of a state bank discover that their capital has become impaired, it is their duty to call a meeting of the stockholders for the purpose of taking care of the same voluntarily, or calling the same to the attention of the State Banking Department for their action; and in the case at bar, when all of the stockholders, as shown by the stock books of the bank, were present, that no notice of such stockholders' meeting was necessary, and notice of said meeting was thereby waived; and that the stockholders of defendant bank, by unanimous consent of the stockholders as shown by the stock book of the bank, could levy an assessment on the stock of said bank in sufficient amount to make good the impairment of the capital stock of the bank, with the same binding force and effect as if directed and ordered to do so by the Bank Commissioner under section 4145, C. O. S. 1921 [O. S. 1931, sec. 9171], which reads as follows:

"Whenever it shall appear that the capital of any bank doing business under this chapter has become impaired, the Bank Commissioner shall notify such bank to make such impairment good within 60 days, and it shall . be the duty of the officers and directors of any bank receiving such notice from the Bank Commissioner to immediately call a special meeting of its stockholders, for the purpose of levying an assessment upon its stockholders sufficient to cover the requirements of its capital stock * * *"

—without waiting to be ordered to make good said impairment by the Bank Commissioner.

We are of the opinion that, under the circumstances in this case, as shown by the un-

disputed evidence, the voluntary assessment was a legal and binding assessment. The assessment being made by the unanimous consent of all of the stockholders, thereby created a lien in favor of the bank on the stock of said bank for the amount of said assessment.

Section 4145, C. O. S. 1921 [O. S. 1931, sec. 9171], provides, in part, as follows:

"Provided, further, that the bank shall have a prior lien upon the stock of each individual shareholder to the extent of such assessment, and upon the failure of any such stockholder to pay the assessment authorized by this section within the time fixed by the Bank Commissioner for making good said impairment, said lien may be foreclosed and the stock of such delinquent stockholder sold, by giving public notice of the time and place of such sale, and of the stock to be sold, by advertisement for 15 days in some newspaper of general circulation published in the county where such bank is located."

After the assessment was made and the lien of the bank attached to the stock in the case at bar, the defendant bank had the right to refuse to transfer said stock on the books of the bank and issue new certificates therefor to the plaintiff herein, as requested by the plaintiff in October, 1924, more than a year after the assessment had been made and the lien attached thereto under section 4151, C. O. S. 1921 [O. S. 1931, sec. 9131], which reads as follows:

"The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws therefor may direct, but no transfer of stock shall be valid against a bank or any creditor thereof so long as the registered holder thereof shall be liable as a principal debtor, surety or otherwise, to the bank for any debt, nor in such cases shall any dividend, interest, or profits be paid on such stock so long as such liabilities continue, but all such dividends, interests, or profits shall be retained by the bank and applied to the discharge of such liabilities, and no stock shall be transferred on the books of any bank where the registered holder thereof is in debt to the bank for any matured and unpaid obligations."

We are further of the opinion that under the evidence in this case the procedure for the sale of the stock was followed as provided by section 4145, supra, and the bank had the right to purchase said stock at said sale for the amount of its lien, and that the trial court did not err in overruling the demurrer and motion for directed verdict of plaintiff.

The plaintiff in error next complains with

reference to the instructions given by the trial court, which were excepted to by plaintiff; however, no requested instructions were submitted by the plaintiff to aid the trial court.

We are of the opinion that the instructions of the trial court were erroneous in so far as the trial court instructed the jury that when the capital stock of the defendant bank became impaired, the officers and directors of the defendant bank may proceed to levy an assessment against the capital stock of said corporation, and that the board of directors of defendant bank were therefore the only persons who could legally levy an assessment against the capital stock of said corporation and the further instruction given by the trial court as follows:

"And when the capital of a banking corporation has become impaired, and the directors at a meeting determine that it is necessary to levy an assessment against the capital stock for the purpose of making such impairment good, then no stockholder as such can resist the said necessity, when called upon to pay his assessment"

—for the reason that, under section 4145, supra, when the capital stock of the bank became impaired, the stockholders were the only ones that could levy an assessment upon the capital stock to cover the requirements of its capital stock; and the only function to be performed by the officers and directors was to call a meeting of its stockholders for such purpose. When all of the record stockholders of the bank, as shown by the stock record of said bank, were present, notice of such meeting was thereby waived.

Under the undisputed evidence in this case, no substantial rights of plaintiff were affected thereby, and the erroneous instructions given by the trial court were harmless.

Judgment affirmed.

RILEY, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and HEFNER, J., absent. CULLISON and SWINDALL, JJ., not participating.

Note.—See under (2) 3 R. C. L. 287; R. C. L. Perm. Supp. p. 788. (3) annotation in 51 A. L. R. 945; 7 R. C. L. 337; R. C. L. Perm. Supp. p. 1983; R. C. L. Pocket Part, title "Corporations," § 315.